November 29, 1909.

———

No. 4817-4818.

(Court of Appeal, Parish of Orleans.)

## SANTIAGO TRUXILLO vs. TEXAS & PACIFIC R. R. CO. AND L. & N. R. R. CO.

B. J. Vega for petitioner and appellee.

Thos. Gilmore of counsel.

Denegre, Blair & Chaffe for L. & N. R. R. Co., appellant.

Howe, Fenner, Spencer & Cocke, for T. & P. R. R., appellant.

ST. PAUL, J.—Plaintiff is a shipper of mules and horses, in which business he has been engaged for a number of years. On January 17, 1906, he shipped a carload of horses and mules from East St. Louis to Donaldsonville, in this State. The route was over the Louisville & Nashville R. R. from East St. Louis to Montgomery, Ala., a distance of 946 miles; from Montgomery to New Orleans, a distance of 321 miles, over the same road, and from New Orleans to Donaldsonville over the Texas & Pacific R. R., a distance of about 60 miles.

There is no evidence showing how the shipment was handled between East St. Louis and Montgomery. At Montgomery the car was unloaded, the stock watered, fed and rested. Here, also, they were inspected and found to be, to all outward appearances, in good condition.

The testimony shows that between Montgomery and New Orleans, the shipment was handled properly and without mishap or any unusual delay.

At New Orleans the shipment was again unloaded. Here it was inspected and it was found that one sorrel mule was crippled in the right fore leg, and one brown mule was droopy and ill.

The shipment was again loaded and forwarded to Donaldsonville. There is no evidence of the manner in which the shipment was handled between Donaldsonville and New Orleans. The shipment reached Donaldsonville on February 6, 1906, and after inspection was delivered to plaintiff.

An inspection showed that there were then four animals injured: One dark bay mule was injured internally and bleeding at the mouth and through other channels; it appeared to have been trampled upon and its injuries

were so severe that it died that night. One light bay mule was crippled in the shoulder. One light bay mule was crippled in the hind leg and one horse was crippled in three legs.

Right then and there plaintiff appraised the damages to the stock as follows: For the dead mule, $195; for the light bay mule crippled in the shoulder, $75; for the light bay mule crippled in hind leg, $35, and for the horse crippled in three legs, $35. The station agent at Donaldsonville saw that the animals were injured in the manner above set forth, and noted the fact on the freight receipt. There is conflict of testimony as to whether the agent agreed as to the valuations which plaintiff placed on the injuries.

On February 9, 1907, plaintiff sued both railroad companies **in solido** for the amount at which he appraised his injuries, and for $3.50 spent for medicines and attention to sick animals, and $4.91 proportion of freight paid on dead mule; in all $348.41.

In the District Court there was judgment for plaintiff as prayed for.

The Texas & Pacific R. R. Co. is sued under its liability as a carrier; no special contract is set up by either party. This defendant pleaded the prescription of one year, but, in our opinion, it is not well taken; where a shipper tenders freight and the carrier accepts it, there is a contract of hire between the two, just as there is between a passenger and the carrier, and damages resulting from the breach of that contract are **ex contractu** and not prescribed by one year. We find it unnecessary to express any opinion as to whether there may not also arise an action **ex delicto** when circumstances warrant it.

The carrier is liable for the things entrusted to his care, unless he can prove that the damage was occasioned by accidental and uncontrollable events. **C. C., 2754.**

Hence, the Texas & Pacific Company, having failed to account for the manner in which the shipment was handled by it, is liable for such damages as are shown to have occurred on its line.

On the other hand, it is not liable for the damages which clearly occurred before it received the shipment.

The evidence satisfies us that the light bay mule found to be crippled in the shoulder at Donaldsonville is the same sorrel which was found to be crippled in the right fore leg at New Orleans. We are also satisfied that the dark bay mule, which was trampled on and bleeding and afterwards died, was the same brown mule which was found to be ill and droopy at New Orleans. It is fair to presume that this sick animal attempted to lie down in the car, and was trampled on by its fellows. Sick animals have a tendency to lie down, and mules are not particular about what may be under foot, especially when a number of them are crowded into a small space. Presumptions of fact, where justified are entitled to as much weight as any other species of evidence. **C. C., 2284, 2288.** Facts established by a fair presumption are as well established as if testified to by witnesses.

We are, therefore, of opinion that the evidence accounts satisfactorily, so far as the Texas & Pacific is concerned, for the mule that died, as well as for the mule crippled in the shoulder or right foreleg; and shows that these were injured by causes beyond the control of that company. It is not liable for these damages.

As to the mule injured in the hind leg and the horse crippled in three legs, they were undoubtedly injured whilst in the care of that company, and no explanation is offered. For these damages that company is liable.

As to the amount of damages to these animals, we are not disposed to split hairs, granting that the station agent did not concur in the estimate made by plaintiff, and

— 21 —

granting that even if he had done so it would not be binding on the company, the fact yet remains that plaintiff, who, as a dealer in horses and mules, ought to know something of the extent to which their values are affected by certain injuries, did make an estimate at the time and in the presence of the agent, and believed that this estimate was accepted. We have no reason to doubt that the estimate was made in good faith, and with the animals before him, his estimate of the injuries made then and there, was probably more correct than had he waited until the trial of the case, nearly three years afterwards. We ourselves are better satisfied than if we were obliged to form our own estimate after having to wade through a lot of testimony bearing on the condition of the horse market at various times, and filled with speculations as to the probable difference between the prices of lame and sound horses. We have no scruples or misgivings about accepting these estimates.

On the other hand, since the plaintiff fixed the amount of damages and lumped them himself, we will not allow him anything else for medicines and care.

We are of opinion that the Texas and Pacific Company is liable to plaintiff for the sum of seventy dollars $70.00.

The case is somewhat different as to the Louisville and Nashville Railroad Company. The contract with that company was reduced to writing in the shape of a Bill of Lading signed by both parties.

This contract is set up specially by the last-named defendant, and it modifies in several particulars the legal contract which would have resulted from a simple tender and acceptance of the shipment.

In substance, the modifications, so far as they are material in this suit, are that in consideration of the fact that the shipper had fixed a valuation not exceeding $75 on each animal, and agreed to bear all risks except-

ing negligence of the carrier, the latter agreed to take the shipment at a greatly reduced rate.

We believe that the plaintiff, a frequent shipper of animals, knew of a difference in rates, when valuations are fixed and the risk is assumed by the shipper, and elected to ship at the lower rate and at his own risk. Moreover, across the face of the Bill of Lading it is written that his attention has been called to the contents thereof.

Where the shipper is given the choice of contracts, and with his eyes open selects one of them, which at the time appears to him the most advantageous for himself, he cannot afterwards repudiate his contract unless the contract be such that the law itself repudiates it.

But where the shipper is aware that there is a difference in rates, and knowingly elects to take certain risks in consideration of the lower rate, and the carrier does not endeavor to shield itself from the consequences of its own negligence, the contract is not one which the law repudiates. Hence, the carrier may avail itself of such a contract in its defence.

### Sims vs. N. O. & N. E. R. R., 122 La. 272.

The carrier, under such a contract, is not liable in any event for any more than the valuation fixed therein, and is not liable at all except for the consequence of its own negligence.

But, reverting once more to Article 2754 of the Civil Code, it appears certain that that article places the burden of proof clearly upon the carrier. Under that article he must show not only that he is guilty of no negligence, but, also, that the damage was occasioned by accidental and uncontrollable events.

### Lehman Stern & Co. vs. M. L. & T. R. R. Co., 115 La. 1.

We do not think that the burden of proof at all shifted

by reason of the existence of a contract modifying **the extent of the liability only.** The article of the Code is based on sound principles, the carrier has possession of the article and must account to the owner for its loss or damage; and, unless this is the result of accidental or uncontrollable events, he is liable.

Now the law permits the owner to waive this liability in part, but not wholly. No stipulation against negligence of the carrier is valid. The result is that the carrier still has the burden of proof, but is not required to prove as much as if nothing had been waived. It suffices if he prove that the loss or damage is not in consequence of any negligence on his part. But this proof he must make if he wishes to escape liability. He, and not the shipper, carries the burden of proof as to negligence **vel non.**

We do not think that the last-named defendant has discharged in full this burden of proof. It has shown that the animals reached Montgomery in good condition, to all outward appearance. It has also shown that the shipment was properly handled between Montgomery and New Orleans. At this point one light bay mule was found to be crippled in the right foreleg. This mule was, therefore, injured somewhere between Montgomery and New Orleans, and defendant was guilty of no negligence which could have caused the injury. We do not know how the mule was injured, he may have been injured by one or more of his fellows. Be that as it may, plaintiff agreed to take all risks, except negligence, and the defendant is not liable for the injury to this mule.

As to the brown mule which reached New Orleans ill and in a droopy condition, the case is different. The gentleman who inspected the car at this point says the mule appeared to have what he supposed to be "lung fever." But this witness frankly admits that he knows nothing about lung fever, and put it down as lung fever

simply because the mule was dull and droopy, and he did not know what else to put it down as. He admits that he does not know whether dullness and droopiness are symptoms of that fever. (Testimony J. D. Fordham, pp. 8 and 9.)

We do not consider this satisfactory proof by any means that this mule had lung fever, and if, as suggested in argument, lung fever is the same as acclimating fever, it would seem hardly probable that this diagnosis was correct. For the mules left East St. Louis on January 26th, reached Montgomery January 29th, remained there seventeen hours, and were unloaded in New Orleans on January 31st, only five days after leaving East St. Louis.

Considering this, also the time of the year and the route traveled, we do not incline to the "lung fever" theory, though we frankly confess we know very little about it. At any rate it is not proved that the mule had lung fever.

Now defendant has failed to account for the manner in which this shipment was handled from East St. Louis to Montgomery, a distance of 946 miles, and an elapsed time of 72 hours or more; under the U. S. statutes of June 29, 1906, those animals should have been unloaded at least twice before reaching Montgomery and properly watered, fed and rested. There is no proof that this was done. And when we consider that it took forty-eight hours to feed and water and rest the animals in Montgomery, and bring them 321 miles to the pen in New Orleans (3 p. m. January 29th, to 3 p. m. January 31st), it would seem that the freight trains by which this shipment came must have traveled the 946 miles between East St. Louis and Montgomery with the speed of the express to have made that distance in only three days and complied with the provisions of the statute. But suffice it to say there is no proof as to the manner of handling this shipment on the

other side of Montgomery and the illness of this mule may have resulted from any one of a number of causes not the least probable being want of proper attention.

We are of opinion that this defendant is liable for the loss of this mule. It is not liable, however, for more than the agreed valuation, $75 (the actual value of the animal is shown to be in excess of this).

This agreed valuation, however, according to the Bill of Lading, was the valuation at place of shipment, East St. Louis. To reach the valuation at destination the freight must be added. This amounts to $4.91, the liability of Louisville and Nashville R. R. Co., therefore, amounts to $79.91.

There is no solidarity of liability between the two defendants, they are not joint trespassers. The fault of one defendant was in no way connected with that of the other. Nor with the damages suffered on any road but its own. Each defendant is alone liable for the damages occurring on its own line.

Both defendants are liable **in solido**, however, for the costs.

### Civil Code, Art. 2087.

For the reasons assigned, it is ordered that the judgment appealed from be amended by reducing the amount allowed plaintiff from $348.41 against both defendants in solido, to seventy dollars against the Texas & Pacific R. R. Co., and $79.91 against the Louisville & Nashville R. R. Co., and striking therefrom the words "**in solido,**" and as thus amended, the judgment is affirmed. Appelles to pay the costs of appeal.